Glenn E. JOHNSON, Richard H. Hunger, Lloyd L. Betcher and Lawrence F. Possehl, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

AB, CD, EF and GH, whose true and correct names are unknown, Plan Administrators, Fiduciaries, Named Fiduciaries, Committee Members and Trustees of the Clevite Industries Inc. Hourly Retirement Plan, The Pullman Company, and Clevite Industries, Inc., Defendants.

Civ. No. 3–91–0471.

United States District Court,
D. Minnesota,
Third Division.

June 30, 1992.

Richard A. Miller, and Teresa K. Fett, Gordon–Miller–O'Brien, and Matthew B. Newman, P.A., Minneapolis, MN, for plaintiffs.

David L. Hashmall, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, MN, and Carol A. Mager, and Brian D. Pedrow, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

### I.  INTRODUCTION

This matter is before the court upon the defendants' motion for summary judgment (Docket No. 14) and upon the plaintiffs' motion for summary judgment (Docket No. 17). For the following reasons, the court grants the defendants' motion and denies the plaintiffs' motion.

### II.  FACTS

The plaintiffs were employees of the Clevite Industries, Inc. Engine Parts Division.

The plaintiffs were covered by the Clevite Industries, Inc. Hourly Retirement Plan. The Plan provided for a Normal Retirement Benefit payable at age 65. Qualified participants who retired before age 65 under the Plan were entitled to a normal retirement benefit reduced by .5% per month for each month before the participant's sixty-fifth birthday. If the participant attained the age of 55 and completed ten years of service before retiring, the normal retirement benefit was only reduced by .2% for each of the first sixty months by which the participant's benefit commencement date preceded his or her sixty-fifth birthday.

In February 1987, Clevite sold the assets of the Engine Parts Division to JPI Acquisition, Inc. JPI did not purchase the assets of the Plan, which were retained by Clevite. The plaintiffs continued to perform the same jobs at the same location for JPI. Clevite passed the Third Amendment of Imperial Clevite Inc. Hourly Plan which provided in part:

5. By adding the following new subparagraph 3.5(f) to the Plan immediately after subparagraph 3.5(e) thereof:

(f) not withstanding any other provisions of the Plan to the contrary, an Employee who is transferred to employment with J.P. Industries, Inc. ... pursuant to the sale of the assets of the company's Engine Parts Division and who, at the time of transfer, had not completed ten Years of Vesting Service or attained Normal Retirement Age shall receive credit for Vesting Service for each full year ... in which he is employed by J.P.I., in accordance with the foregoing rules generally applicable to Vesting Service with an Employer. Such an Individual's Termination of Vesting Service will be the date the individual terminates employment with J.P.I. Employment with J.P.I. will not be taken into account for purposes of determining Benefit Service or, except as provided above, for any other purposes under the Plan and thus, if an Employee described above completes ten Years of Vesting Service, the type and amount of benefit he will be entitled to shall be the type and amount of benefit he otherwise would have been entitled to at the time of transfer if he then had completed ten years of Vesting Service. A transferred Employee who had completed ten years of Vesting Service or attained Normal Retirement Age prior to the time of transfer shall be entitled to the same type and amount of benefit he was entitled to at the time of the transfer.

In July 1987, the Pullman Company acquired the stock of Clevite, including the Plan. Pullman has refused to give the plaintiffs the .3% subsidy because when the plaintiff's employment with Clevite ended, none of the plaintiffs satisfied both the age and service requirements of the Plan.

## III. DISCUSSION

■ A court shall render summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (1987). Section 204(g) of ERISA provides:

**(g) Decrease of accrued benefits through amendment of plan**

**(1)** The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.

**(2)** For purposes of paragraph (1), a plan amendment which has the effect of—

**(A)** eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

**(B)** eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in subparagraph (B) (other than a plan amendment having an effect described in subparagraph (A)).

29 U.S.C. § 1054(g). The legislative history of Section 204(g) explains that Section 204(g):

> generally protects the accrual of benefits with respect to participants who have met the requirements for a benefit as of the time a plan is amended and participants who subsequently meet the preamendment requirements. The bill does not, however, prevent the reduction of a subsidy in the case of a participant who at the time of separation of service (whether before or after the plan amendment) has not met the preamendment requirements.

S.Rep. No. 575, 98th Cong., 2d Sess. 28, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547, 2574. Section 204(g) only applies, therefore, when the participant satisfies the preamendment conditions for the subsidy. *See, Adams v. LTV Steel Mining Co.,* 936 F.2d 368, 371 (8th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 968, 117 L.Ed.2d 134 (1992).

The plaintiffs argue that they should be allowed to credit age and years of service attained as employees of JPI because an employee can accumulate age and years of service until the time of separation of service. The plaintiffs rely on selected sections of the Internal Revenue Code, and cases interpreting "separation of service" in the contexts of benefit distributions under Section 402 of the IRC and severance pay which hold that a "separation of service" does not occur when the employee continues to work in the same job only for a different employer after a liquidation, merger, or consolidation. *See, United States v. Haggart,* 410 F.2d 449 (8th Cir.1969); *United States v. Martin,* 337 F.2d 171 (8th Cir.1964).

The term "separation of service" has been treated differently, however, under other sections of the IRC. For example, in the context of qualified trusts under Section 401(a) of the IRC, the IRS General Counsel has stated that:

> A determination as to whether a severance from employment has occurred should be made on the basis of whether or not the employee continues to be employed by the

employer maintaining the plan ... rather than on the basis of whether the employee continues to work on the same job for a different employer as a result of a liquidation, merger, or consolidation, etc.

Gen.Couns.Mem. 39,824 (Aug. 15, 1989).

In *Lear Siegler Aerospace Products Holding Corp. v. Smiths Industries, Inc.,* C.A. No. 88 Civ. 1528 (JMC), 1990 WL 422417, 1990 U.S.Dist. LEXIS 2887 (S.D.N.Y. Mar. 16, 1990), the district court directly addressed whether employees can satisfy preamendment requirements after the sale of a division under Section 204(g). The *Lear* court held that, "an employee can no longer "grow into" his right to a subsidy where he no longer works for the plan sponsor." *Id.* at *14, 1990 U.S.Dist. LEXIS 2887 at 38–9.

In this case, the Clevite Industries Inc. Hourly Retirement Plan conditioned its subsidy upon the participant attaining fifty-five years of age and completing ten years of service while employed by Clevite. Clevite Plan, §§ 1.1, 4.2(a). At the time of the sale, Mr. Possehl was fifty-five years old and had been employed by Clevite for approximately five years. Mr. Betcher was fifty years old and had been employed by Clevite for approximately thirty years. Mr. Hunger was forty-nine years old and had been employed by Clevite for approximately nine years.[1]

After the sale of assets to JPI, it was no longer possible for the plaintiffs to either attain the age of fifty-five as an employee of Clevite or to accumulate ten years of service as an employee of Clevite. The plaintiffs will never be able to satisfy the preamendment conditions of the Plan. For that reason, the "anti-cutback" clause of ERISA does not apply to the plaintiffs' claims. No genuine issues of fact remain for trial and the defendants are entitled to judgment as a matter of law.

Accordingly, IT IS ORDERED that:

The defendants' motion for summary judgment (Docket No. 14) is GRANTED. The

---

1. At the time of the sale, Mr. Johnson was fifty-seven and had been employed by Clevite for approximately thirty-three years. On January 1, 1989, he began to receive his pension benefit calculated with the .3% subsidy.

plaintiffs' motion for summary judgment (Docket No. 17) is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.